OPINION
{¶ 1} The instant appeal emanates from a final judgment of the Painesville Municipal Court. Appellant, Steve V. Cherniss, seeks the reversal of his conviction on one count of possession of drug paraphernalia. As the basis for his appeal, appellant asserts that the trial court erred in denying his motion to suppress certain evidence obtained during a traffic stop.
 {¶ 2} A review of the trial record in this matter reveals the following essential facts. On November 17, 2003, Officer Brenda Dibble ("Officer Dibble") of the Painesville Police Department was engaged in routine patrol within the city's territorial jurisdiction in a marked patrol car. At approximately 3:00 a.m., Officer Dibble saw the driver of a Ford Crown Victoria squeal and peel his tires on slightly wet pavement. Based upon this observation, Officer Dibble initiated a traffic stop. After the Crown Victoria had pulled off the road and stopped, the officer approached the vehicle and learned that appellant had been operating the car at the time of the traffic offense. The officer also learned that appellant's girlfriend, Brenda Butts, was the sole passenger in the car.
 {¶ 3} At approximately the same time Officer Dibble saw appellant squealing his tires, Deputy Michael Zgrebnak ("Deputy Zgrebnak") of the Lake County Sheriff's Department was preparing to exit the parking lot of his post. At that time, he observed appellant's vehicle drive past him at a high rate of speed. Before Deputy Zgrebnak could begin to follow appellant, Officer Dibble drove by the post and ultimately stopped appellant's vehicle. Deputy Zgrebnak followed Officer Dibble and arrived at the scene of the traffic stop as she was speaking to appellant for the first time.
 {¶ 4} At the close of that initial conversation, Officer Dibble walked back to her cruiser and spoke with Deputy Zgrebnak. At that time, Deputy Zgrebnak informed her that he had stopped appellant's vehicle about three hours earlier on the basis that the vehicle had been parked in a suspicious location. Deputy Zgrebnak further informed her that appellant had been searched during the first stop, and that appellant had been released when the search did not reveal any illegal activity. According to the deputy's statement to Officer Dibble, appellant had told the deputy at the conclusion of the first stop that he intended to go home immediately. Finally, Deputy Zgrebnak stated to Officer Dibble that appellant was a known drug user.
 {¶ 5} Officer Dibble then returned to the side of appellant's vehicle and had a second conversation with him about the first traffic stop. In light of appellant's responses to her questions, Officer Dibble immediately requested him to exit his car. Once appellant had complied with this request, Officer Dibble asked if he had any weapons on his person. After appellant had answered to the effect that he didn't believe he did, the officer then conducted a pat-down search. In patting the front of appellant's jacket, she felt a long hard object in his pocket. For a moment, Officer Dibble stepped back, and Deputy Zgrebnak again asked appellant if he had any weapons. When appellant did not provide a satisfactory answer, Officer Dibble took the object from his pocket. She quickly recognized the object as a crack cocaine pipe, and placed appellant under arrest.
 {¶ 6} Three days after the foregoing incident, a criminal complaint was filed in the trial court against appellant, charging him with possession of drug paraphernalia under R.C. 2925.14(C)(1). Initially, appellant entered a plea of not guilty to the sole charge, and the case was set for trial. However, before the matter could go forward, appellant moved the trial court to suppress the "fruits" of the pat-down search of his person, i.e., the crack cocaine pipe. As the primary basis for this motion, appellant argued that the search had been improper because the two police officers had not had a justifiable suspicion that he had any type of weapon in his possession which would pose a threat to their safety.
 {¶ 7} An evidential hearing on the motion to suppress was held on March 1, 2004. At the beginning of this proceeding, Officer Dibble gave testimony on the following three factual issues. First, she stated that, immediately after exiting her cruiser at the outset of the stop, she noticed that appellant was "moving around" inside his vehicle and was "leaning over" into different areas of the car. As to this point, Officer Dibble stated that appellant continued to act extremely nervous and shaky during the entire stop. Second, she testified that, once Deputy Zgrebnak had informed her of the first stop of appellant's vehicle, she specifically asked appellant if he had been the subject of a prior stop earlier that evening. According to Officer Dibble, appellant initially denied that the first stop had occurred, but then recanted his statement when Deputy Zgrebnak walked by the front of his vehicle. Third, Officer Dibble testified that when she first asked appellant if he had any weapons in his possession, he replied that he did not have "anything." She further testified that, after she felt the object in his pocket and Deputy Zgrebnak again inquired as to the presence of any weapon, appellant merely stated that he did not "know" if the object in his pocket was a weapon.
 {¶ 8} As part of his testimony during the hearing, Deputy Zgrebnak gave the following summary of the first stop of appellant's vehicle: (1) at approximately 11:30 p.m., he had been dispatched to respond to a call concerning a person who had been seen looking into parked cars; (2) in the dispatch, Deputy Zgrebnak was given a description of a car which matched appellant's vehicle; (3) when Deputy Zgrebnak first saw appellant's car, it was parked with its lights off in an area in which new homes were being constructed; (4) during the first stop, Deputy Zregbnak had patted-down appellant and also searched his vehicle, but did not find any illegal objects or materials; and (5) at the close of the first stop, appellant had told Deputy Zgrebnak that he intended to go home immediately. In regard to the second stop, Deputy Zgrebnak testified that appellant was very "jittery" during the entire stop and was constantly moving his hands.
 {¶ 9} Finally, appellant testified in his own behalf at the hearing. As to the first stop by Deputy Zgrebnak, appellant stated that he had been parked on the street because he was waiting for someone who lived on an adjacent street to come home.[1] In regard to the second stop by Officer Dibble, appellant first testified that the officer never told him what the initial reason had been for the stop. Second, he testified that he had appeared nervous during the stop because he had just had an argument with his girlfriend. Third, appellant emphasized that he never consented to the pat-down search.
 {¶ 10} On the same day as the evidential hearing, the trial court rendered a judgment in which it overruled the motion to suppress the cocaine pipe. One week later, appellant requested to change his plea from not guilty to one of no contest. Upon accepting the new plea, the trial court then found appellant guilty of possession of drug paraphernalia. As a result, the court sentenced him to a jail term of thirty days, fined him the sum of $250, and suspended his license to drive for a period of six months. As to the jail term, the trial court suspended fifteen days of the term and placed appellant on probation for twelve months.
 {¶ 11} In now appealing this conviction, appellant has assigned the following as error:
 {¶ 12} "The trial court erred to the prejudice of [appellant] when it overruled his motion to suppress challenging the lawfulness of the police search and seizure, in violation of his constitutional rights against unreasonable search and seizure as guaranteed by the Fourth and Fourteenth
Amendments of the United States Constitution and Section 14, Article 1 of the Ohio Constitution."
 {¶ 13} Under this sole assignment, appellant has raised two basic arguments regarding the merits of the trial court's decision to deny his motion to suppress. First, he contends that the pat-down search violated his constitutional rights because the two officers did not have a reasonable suspicion that he had a weapon in his possession at the time of the stop. In support of this contention, he asserts that his "nervous" behavior during the stop was insufficient to establish a reasonable suspicion; thus, Officer Dibble's decision to search him was based solely upon the fact that he was a known drug user. Second, appellant argues that it was improper for Officer Dibble to remove the cocaine pipe from his pocket because it did not plainly "feel" like a weapon.
 {¶ 14} At the outset of our analysis, this court would indicate that Officer Dibble's action in pulling appellant's vehicle over was permissible under well-established precedent of this state. The Supreme Court of Ohio has expressly held that a stop of a motor vehicle is constitutionally valid when the officer has either a reasonable suspicion of a criminal violation or probable cause to believe that an offense has occurred. Dayton v. Erickson (1996), 76 Ohio St.3d 3, 10-11. In applying this general standard, we have consistently held that such a valid reason for a traffic stop exists when an officer personally observes a violation of a traffic law. See State v. Kelly, (Dec. 7, 2001), 11th Dist. No. 2000-P-0113, 2001 Ohio App. LEXIS 5444. Under such circumstances, the officer has probable cause to believe that a traffic offense has been committed.
 {¶ 15} In the instant case, appellant did not dispute the fact that he had squealed his tires prior to the traffic stop, thereby violating a city ordinance against that behavior. As a result, the question before this court concerns the propriety of Officer Dibble's actions once the stop had been initiated.
 {¶ 16} As a general proposition, a police officer lacks the authority to automatically frisk any individual who is the subject of a valid investigative stop. State v. Brown, 11th Dist. No. 2001-L-168, 2002-Ohio-6930. This court has applied this basic proposition in the cases involving traffic stops based upon alleged violations of traffic laws. See State v. Wojtaszek, 11th Dist. No. 2002-L-016, 2003-Ohio-2105. The proposition stems from the constitutional principle that a warrant predicated upon probable cause must generally be obtained before a search of a person can be conducted. However, certain exceptions to the general warrant requirement have been recognized under Fourth Amendment jurisprudence. Pursuant to one such exception, a police officer is allowed to perform a limited pat-down search when the officer can form a reasonable belief that the detainee has a weapon and could constitute a present danger for the officer. Id., at ¶ 18, citing Terry v. Ohio
(1968), 392 U.S. 1, 24.
 {¶ 17} In discussing the elementary parameters of the "pat-down" exception, this court has previously stated:
 {¶ 18} "* * * [The] police officer is permitted under certain circumstances to conduct a limited protective search of a detainee's person for concealed weapons. State v. Evans (1993), 67 Ohio St.3d 405, 408
* * *. The purpose of this limited search is to allow an officer to pursue his or her investigation without fear of violence; it is not intended to provide the officer with an opportunity to ascertain evidence of a crime. Id. The United States Supreme Court sets forth the standard for a `frisk' as follows:
 {¶ 19} "`Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. * * * And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.' (Citations omitted.) Terry, 392 U.S. at 27." Brown,
2002-Ohio-6930, at ¶ 17-18.
 {¶ 20} In applying the foregoing standard to various factual scenarios, this court has indicated that a finding of a reasonable suspicion does not have to be predicated solely on the fact that a large object is protruding from the detainee's clothing; instead, such a finding can be based upon the surrounding circumstances. For example, inWojtaszek, 2003-Ohio-2105, our conclusion that the pat-down search had been proper was based upon the following facts: (1) the stop took place at 2:45 a.m.; (2) the detainee acted as if he was intoxicated; (3) the two passengers in the vehicle were also acting in a loud and boisterous manner; and (4) there was an open case of beer on the front seat.
 {¶ 21} Our review of the relevant case law further shows that a detainee's nervousness is a factor which can be considered in determining whether a limited pat-down search of the detainee was justified. In Statev. Gaspard (Feb. 29, 1996), 3rd Dist. No. 12-95-12, 1996 Ohio App. LEXIS 1007, the defendant-detainee exhibited a nervous demeanor during the traffic stop and also told the police officer that there were two shotguns sitting on the back seat of the vehicle. In light of these facts alone, the appellate court held that the police officer could have had an objectively reasonable belief that the detainee had a weapon on his person and could possibly be dangerous.
 {¶ 22} This court has also had the opportunity to review traffic stops in which the driver of the vehicle was overly nervous. In Mentor v.Fedor (Sept. 15, 2000), 11th Dist. No. 99-L-166, 2000 Ohio App. LEXIS 4213, the primary question before us was whether the search of a passenger in the stopped vehicle had been proper. However, as part of our analysis, we also addressed whether the search of the driver had been constitutional:
 {¶ 23} "Here [the officer] stopped Thornton for failure to display a front license plate. Prior to issuing Thornton a warning, [the officer] observed that Thornton seemed unusually nervous because his hands were shaking and he broke out in a sweat as he handed over his license. Further, Thornton admitted that he was nervous. [The officer] returned to his auto and ran Thornton's license through dispatch. As he was doing that, he saw Thornton reach under his seat. [The officer] asked Thornton to step out of the car and he patted him down, fearing that he may have a weapon. Therefore, when considering the totality of the circumstances, it is our determination that [the officer] had a reasonable suspicion to initially detain Thornton and appellant after the issuance of the warning regarding the front license plate." Id. at 7.
 {¶ 24} In the instant case, Officer Dibble never testified that she had seen appellant try to reach for an object underneath the front seat of his vehicle; as a result, this court would agree that appellant's nervous condition and his movements within the car would not be sufficient to warrant a pat-down search for a possible weapon. However, there were other facts of which Officer Dibble was fully aware before the search of appellant's person began. First, she knew that appellant had previously been pulled over that night for other suspicious behavior. Second, she knew that appellant was still in the general area of the first stop over three hours later. Third, she knew that appellant denied ever being involved in the first stop until he saw Deputy Zgrebnak. Fourth, she knew that this second stop had occurred at approximately 3:00 a.m.
 {¶ 25} While appellant's nervous behavior would not, in and of itself, constitute sufficient grounds for a pat-down search, that behavior can be considered in combination with the foregoing four facts. When it is, this court concludes that there were sufficient objective facts upon which Officer Dibble could form a reasonable suspicion that appellant might be armed and possibly dangerous.
 {¶ 26} Throughout his appellate brief, appellant emphasizes that Officer Dibble was also told prior to the search that he was a known drug user. While this court would certainly agree that a pat-down search during an investigative stop cannot be based on such a fact alone, again our review of the trial record shows that there were other facts before Officer Dibble upon which she could draw a reasonable suspicion warranting the limited pat-down search. Under such circumstances, this court must assume that the officer's actions were predicated upon the existing legitimate reasons supporting the search.
 {¶ 27} In regard to the general propriety of the pat-down search, appellant also argues that the search should never have occurred because Officer Dibble detained him for too long of a period. Specifically, appellant contends that he should have been released from custody as soon as he was given the citation for squealing his tires. However, in considering the "detention" issue in prior opinions, this court has indicated that it is permissible to continue the detention once the officer has begun to form the reasonable suspicion that the detainee could pose a threat to her safety. See Brown, 2002-Ohio-6930. In this case, the evidence submitted to the trial court supported the finding that Officer Dibble learned of the additional information from Deputy Zgrebnak immediately after her initial conversation with appellant. There was simply no evidence before the trial court which would have supported a finding that Officer Dibble improperly extended the length of the stop in the hope of conducting a search.
 {¶ 28} Finally, appellant argues that, once Officer Dibble had patted the crack pipe, the search should have been terminated because that object does not "feel" like a weapon. As to this point, we would note that, in reviewing a somewhat similar factual scenario, we have held that a reasonable police officer could conclude that a hard object could be a weapon such as a dagger or syringe. See Wojtaszek, 2003-Ohio-2105. During her testimony in this case, Officer Dibble stated that she thought that the long, hard object in appellant's pocket possibly could have been a knife or other type of weapon. In light of the various forms a knife can take, this court concludes that Officer Dibble's belief was not unreasonable under the circumstances.
 {¶ 29} In reviewing the merits of a ruling on a motion to suppress on appeal, this court must engage in a two-step process. First, we must determine from the trial record whether the trial court's factual findings were properly supported by competent, credible evidence. Second, we must then decide, as a matter of law, whether those facts were sufficient to satisfy the constitutional standard for the Fourth
Amendment question. See State v. King, 11th Dist. No. 2003-A-0018, 2004-Ohio-2598, at ¶ 7.
 {¶ 30} Upon reviewing the transcript of the evidential hearing in the instant appeal, this court holds that the testimony of Officer Dibble and Deputy Zgrebnak was inherently credible; hence, it cannot be said that the trial court abused its discretion in accepting their version of the various events in this matter. Furthermore, we hold that those facts were legally sufficient to establish that Officer Dibble had a reasonable suspicion that appellant could pose a possible threat to her safety and that of Deputy Zgrebnak. Thus, since the trial court did not err in concluding that the pat-down search of appellant was constitutionally proper, his sole assignment of error in this appeal is without merit.
 {¶ 31} Pursuant to the foregoing analysis, the judgment of the trial court is affirmed.
Grendell, J., Rice, J., concur.
[1] As to why he had chosen to park on an adjacent street, appellant only stated that he and his girlfriend had not wanted to sit in the person's driveway while they were waiting.